**Archie SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–86–0522–CR to 01–86–0524–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 1987.

Rehearing Denied June 18, 1987.

Steven R. Rosen, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Harris County Asst. Dist. Atty., Houston, for appellee.

Before HOYT, WARREN and DUNN, JJ.

HOYT, Justice.

This is an appeal from convictions for three felony offenses of aggravated kidnapping. A jury found appellant guilty and, in addition to a $10,000 fine in each case, assessed his punishment in the cases at 75 years, 35 years, and 75 years imprisonment.

The record indicates that the appellant was indicted for the April 28, 1985, aggravated kidnappings of Mack C. Sims, Luella Sims, and Lunecia R. Smith. The facts indicate that appellant killed his wife, Laneta Sims Smith, and fled to his wife's parents' residence, taking all occupants hostage. While taking refuge at the Sims' residence, appellant threatened to use dead-

ly force to prevent his victims from leaving the house.

In his first point of error, appellant contends that the trial court erred in permitting the prosecutor to "argue that the appellant had killed or seriously injured two persons unrelated to the offense trial, where there was no evidence of this in the record."

During the guilt/innocence phase of trial, the State made the following argument:

[PROSECUTOR]: You know from Ms. Sims testimony that [the appellant] thought they had been messing in his business, and if she hadn't told her husband a man, he refused to even meet—if Ms. Sims hadn't told her husband about it and he hadn't messed in his business, he wouldn't have been held at gunpoint either. But, you know those are the folks that he blamed for the death of their daughter. It was all their fault.

So, what is he is [sic] going to do? Knowing that the police are going to be after him for not only killing their daughter, but you heard the evidence he killed another person and seriously injured another.

[DEFENSE]: Your Honor, I object to that. That is not in evidence.

COURT: Overruled.

We agree with the appellant that the court should have sustained his objection. However, the record reflects that the defense counsel elicited the following facts during cross-examination:

[DEFENSE COUNSEL]: You were very upset that Archie did not let you or your husband go down to the morgue on Sunday. Isn't that correct—when the morgue called and said have somebody come down and identify the body?

[MS. SIMS]: I was more upset about being killed at that point than I was—the Sunday morning I really didn't get it through my mind my daughter was killed. I knew two were killed and one was critically injured, but I had hopes my daughter was still alive.

[DEFENSE COUNSEL]: Just answer my questions, please.

While the jury may have drawn the inference that the other death and injuries were caused by appellant, the record reflects only that appellant killed his wife. We disagree however with appellant's contention that this error requires a reversal of the case. Error is harmless if it is rendered unimportant by overwhelming evidence of guilt. *Clark v. State*, 627 S.W.2d 693, 706 (Tex.Crim.App.1981 (op on reh'g).

We conclude that because appellant was being tried for kidnapping and the evidence on those charges was overwhelming, and because the same general facts were elicited by the appellant, the error was harmless beyond a reasonable doubt.

Appellant's first point of error is overruled.

In his second point of error, appellant argues that the trial court erred in admitting the testimony of Mack C. Smith, Jr. concerning what his father told him had occurred during the kidnappings. Specifically, appellant's argument is that the State offered the hearsay testimony of Mack C. Smith, Jr., not to explain the subsequent actions of the witness, as the prosecutor claimed in response to defense objection, but to bolster the testimony of two prosecution witnesses who had previously testified, unimpeached, to the same set of facts.

It is well-settled that a reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to appellant's conviction. *Vanderbilt v. State*, 629 S.W.2d 709, 723–725 (Tex.Crim.App.1981). In the present case, the hearsay complained of was cumulative of a miniscule amount of uncontroverted evidence presented through the testimony of two other witnesses establishing the details of the event. Where the complained of hearsay is either cumulative of other evidence properly admitted, or rendered unimportant by overwhelming evidence of guilt, any error in its admission is harmless. *Andrade v. State*, 700 S.W.2d 585, 588 (Tex.Crim.App.1985) (cumulative); *Clark v. State*, 627 S.W.2d at 706 (overwhelming evidence). Under the facts, we hold that the asserted error herein is harm-

less because the complained of hearsay is both cumulative and, more importantly, dwarfed by the overwhelming evidence of appellant's guilt. *Id.*

Appellant's second point of error is overruled.

In his third point of error, the appellant contends that the State committed reversible error in using peremptory strikes for the purpose of excluding blacks from the venire panel solely on the basis of their race, in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State contends that the appellant failed to object to the impaneled jury before it was sworn, and that the appellant thus failed to present a prima facie case of purposeful discrimination.

■ To establish a prima facie case of purposeful discrimination by the State in the selection of a jury, the defendant must show that: (1) the defendant is a member of a racial group capable of being singled out for differential treatment; (2) the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; and (3) these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude an identifiable group from the jury on the account of race. *Id.* 106 S.Ct. at 1723. The defendant is entitled to rely on the fact that the peremptory challenge process constitutes a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953). Expressed differently, the defendant need not prove that the State systematically excluded a racial group from jury service, but may show that a "pattern" of questions used to exclude one racial group was not used to exclude other racial groups. He may also rely upon the inferences that may be drawn from the prosecutor's questions and statements during voir dire to support his assertion. *Batson,* 106 S.Ct. at 1723.

The record reflects that after the jury was selected and sworn, the appellant's counsel made a motion to impanel another jury because the prosecutor had struck six

black venirepersons. During jury deliberation, a *Batson* hearing was held with the consent of the prosecutor. The prosecutor then recited into the record her reasons for striking the black venire members. Appellant did not cross-examine the prosecutor, introduce any documentary evidence into the record, or offer any testimony of his own.

■ While we agree with the State's contentions that this issue was initially waived when appellant failed to make a timely objection, we note that the waiver would be inapplicable here because the court on its own, with the consent of the State, provided a *Batson* hearing. Therefore, we conclude that at any point that a hearing is accorded, although previously waived, the court must handle the hearing as though an objection was timely made.

■ Under the state of the evidence, however, no prima facie case of purposeful discrimination was presented by the appellant. No other facts or relevant circumstances were introduced from which an inference of purposeful discrimination by excluding blacks from the venire could arise. Our conclusion is not to be construed as endorsing the testimony of the prosecutor as articulating a neutral explanation for the exclusion of the six black venire members from the jury. A prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged veniremen of the defendant's race on the assumption—or his intuitive judgment—that the venire person would be partial to the defendant because of their shared race. *Batson,* 106 S.Ct. at 1723. In fact, under the circumstances, the prosecutor's explanations may be construed as more inculpatory than exculpatory. At the hearing, the prosecutor testified as follows:

> The jury panel that we had available of fifty-five people, I struck the number two person, whose name is Ms. Pleasant, for a number of reasons. She indicated she had a friend who was charged with a crime, and not having any further time than I had, I did not have time to go into the reasons and who it was and what

type of crime it was. Also, *from her jury information form, I determined her to be an uneducated woman. She is a bus driver.* I did not feel like she would be a good risk for the State, mainly because of the friend of hers who had been charged with a crime.

The number seven person, whose name is *Ms. Scott, is unemployed. She is a student somewhere, and we were not able to go into that in any depth at all.* Do [sic] don't know where she goes to school or how long she has been unemployed, and I am looking for people with roots in the community, and I did not feel like she had those.

The number twenty-three juror I mention only because she was a black lady, whose name was Ms. Shenette. She was struck for cause because she said under no circumstance could she give a life sentence. Seated next to her was a Ms. Hamilton, number twenty-four, who had a friend who had been charged who continually shook her head and agreed with both her neighbors, number twenty-three and number twenty-five regarding life as too great a punishment. She indicated a couple of times by agreeing with those two people, number twenty-three and number twenty-five, that life would be too great a penalty, and I struck her for that reason.

Number twenty-five was a Ms. Whitfield who was a black female whom I originally challenged for cause because she indicated under no circumstance could she give a life sentence, and as we were before the bench, she equivocated and said she could consider a life sentence. I did not consider her to be a strong juror because, frankly, I did not believe, after she equivocated two or three times, that she could in fact ever give a life sentence.

I struck number twenty-nine, whose name was Ms. Justice, after she indicated to me on the jury panel that she could not give a life sentence. I originally challenged her for cause on that point. She again equivocated at the bench and, rather than push it before the Bench, to get a challenge for cause, I struck her.

She had also had a friend who was charged and indicated that that was something that she was not pleased about.

Number thirty-six was a black man by the name of *Mr. Dennis. He sat on the righthand side of a bench and slouched throughout the whole voir dire as if he was sitting in a recliner. He had on four gold necklaces, a gold watch and ten gold rings, and I figured his attitude was too casual and flashy to be a member of the jury, and I struck him.*

I note, for the record, I did not strike number sixteen, whose name is Mr. Davis, and he is, in fact, on the jury.

I did not strike number twenty-one, who is a black male, whose name is Mr. Bluford. He was seated on the jury, and over the State's objection, he was removed from the jury and replaced by the next available juror, who was a white male.

I also want to point out for the record that number thirty-one was a black female by the name of Ms. Cox. I did not strike her, but the defense did strike her, and that's what I have to offer, Your Honor.

[Emphasis supplied.] We simply state that it was the defendant's burden to go forward, not the State's, and that the appellant failed in this regard. Therefore, *no explanation was necessary.* Accordingly, we overrule appellant's third point of error.

■ In his fourth point of error, appellant contends that the evidence was insufficient to convict him of kidnapping. Specifically, he argues that the indictment alleged that he kidnapped "Mack C. Sims" while at trial the State produced evidence that he kidnapped "Mack Clifton Sims, Sr." He asserts that this variance is significant, especially in light of the fact that there were two persons named Mack C. Sims. He further argues that the "failure of the indictment to include the senior appellation renders the variance between the pleadings and proof fatal to the conviction."

Tex.Code Crim.P.Ann. art. 21.07 (Vernon 1966) provides in pertinent part: "In alleg-

ing the name of the defendant, or of any other person necessary to be stated in the indictment, it shall be sufficient to state one or more of the initials of the Christian name and the surname." The suffixes "Jr." or "Sr." do not form a part of a person's legal name, and may be rejected as surplusage. *See Cherry v. State*, 447 S.W.2d 154, 156 (Tex.Crim.App.1969). In light of the above, we hold that there is no variance between the indictment and the proof. *Id.*

Appellant's fourth point of error is overruled.

In his fifth and sixth points of error, appellant contends that the trial court erred in instructing the jury on the law governing parole and good conduct time credit.

This Court and several other appellate courts have held that the jury charge contained in article 37.07, § 4, Tex.Code Crim. P.Ann. (Vernon Supp.1987) is not unconstitutional. *Joslin v. State*, 722 S.W.2d 725, 735 (Tex.App.—Dallas 1986, pet. granted); *see Patton v. State*, 717 S.W.2d 772 (Tex. App.—Fort Worth 1986, pet. pending); *Clark v. State*, 721 S.W.2d 424 (Tex.App.— Houston [1st Dist.] 1986, pet. pending). Accordingly, we overrule appellant's fifth and sixth points of error.

The judgments are affirmed.