**Terrance Lydell PERRY, Appellant,**

v.

**STATE of Texas, State.**

**Nos. 2–88–137–CR, 2–88–138–CR.**

Court of Appeals of Texas,
Fort Worth.

May 11, 1989.

Suzie Johnson, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Greg Pipes, Steven Marshall, and David L. Richards, Asst. Crim. Dist. Attys., for the State.

Before HILL, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Terrance Lydell Perry, received two concurrent sentences of twelve years in the Texas Department of Corrections after a jury verdict of guilty for two aggravated robberies with a deadly weapon. TEX. PENAL CODE ANN. sec. 29.03 (Vernon 1989). Perry has perfected this appeal.

In his sole point of error, Perry contends the trial court erred in overruling his motion to dismiss the jury panel because the State excluded minority members solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712 (1986). *Batson* set forth the standards for assessing a prima facie case of discriminatory selection of the venire. The defendant must show: 1) he is a member of a cognizable racial group; 2) the prosecutor had exercised peremptory challenges to remove the venire members of the defendant's race; and 3) the facts and any other relevant circumstances which raise an inference the prosecutor used peremptory challenges to exclude the veniremen on account of their race. *Id.* at 1712. The defendant's establishment of a prima facie case creates a rebuttable presumption the prosecutor exercised his peremptory challenges in a discriminatory manner. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981). The burden then shifts to the State to come forward with a neutral explanation for the challenges. *Batson*, 106 S.Ct. at 1723–24 n. 20, *citing Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096. The Texas Court of Criminal Appeals explained:

> [O]ur focus, as well as that of the trial judge, should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal.

*Keeton v. State*, 749 S.W.2d 861, 870 (Tex. Crim.App.1988); *see generally Anderson v. State*, 758 S.W.2d 676 (Tex.App.—Fort Worth 1988, pet. requested).

Perry is black. There were six blacks in the range of selection on the jury panel. The State struck five of the six blacks, but Perry now complains of only four strikes which he contends were racially motivated. One black served on the jury. Perry also complains because two Hispanic females and an Indian/Moslem male were struck by the State.

Before the Supreme Court's decision in *Batson*, a prosecutor's use of peremptory challenges was subject to the equal protection clause, but defendants could only establish a prima facie case of purposeful discrimination by showing a long-term pattern of striking blacks in case after case. *Swain v. Alabama*, 380 U.S. 202, 223–24, 85 S.Ct. 824, 837–38, 13 L.Ed.2d 759 (1965); *United States v. Clemons*, 843 F.2d 741, 745 (3d Cir.1988). Under this standard, a defendant was not limited to challenging the exclusion of members of his own race because any defendant had "standing to challenge the systematic exclusion of any identifiable group from jury service." *Peters v. Kiff*, 407 U.S. 493, 500, 92 S.Ct. 2163, 2167, 33 L.Ed.2d 83 (1972) (white defendant challenged the systematic exclusion of black jurors).

In *Batson*, the court noted the requirement that the defendant establish the repeated striking of blacks over a number of cases created a crippling burden of proof. *Batson*, 106 S.Ct. at 1720. The Court then held a defendant could establish a prima facie case of purposeful discrimination based solely on the prosecutor's exercise of peremptory challenges in the defendant's case. *Id.* at 1722. "In order to establish such a case, the defendant must first show he is a member of a cognizable racial group and the prosecutor has exercised peremptory challenges to remove from the venire *members of the defendant's race.*" *Id.* at 1723 (emphasis added; citation omitted). In *Batson*, the Court was not applying conventional equal protection analysis because its new rule is limited to allegations of impermissible strikes of members of the defendant's race

while equal protection claims may be based on other grounds such as sex discrimination. *Id.* at 1737 (Burger, C.J., dissenting). The Court overruled *Swain* to the extent that it is contrary to the principles articulated in *Batson.* *Id.* at 1725 n. 25. Therefore, the requirement of "systematic discrimination in a number of cases" is still valid when the defendant complains the prosecutor struck members of a racial group different than the defendant because the principles articulated in *Batson* are expressly limited to discrimination based on a prosecutor striking members of the defendant's race while decisions such as *Peters v. Kiff* allow any defendant to complain of the systematic exclusion of any identifiable group.

Perry contends he is entitled to the granting of a *Batson* motion based on the prosecutor striking two Hispanic jurors and one Indian juror. Perry had not alleged any systematic exclusion of Hispanics or Indians. To support this claim, Perry cites *Seubert v. State,* 749 S.W.2d 585 (Tex.App.—Houston [1st Dist.] 1988, pet. requested). In *Seubert,* a white defendant alleged the prosecutor struck a black juror based on the juror's race. The court reasoned *"Batson* requires the defendant to show that he belonged to the excluded class. This is a reasonable requirement for a defendant claiming denial of equal protection on the basis of race, and *Batson* was squarely grounded on the equal protection clause of the 14th Amendment." *Id.* at 588. However, the court went on to state *"Batson* established a remedy for black defendants claiming denial of equal protection. To apply its 'same race' or 'membership' requirement to deny relief in this case would require us to ignore contrary holdings in *Peters v. Kiff,* [407 U.S. at 500, 92 S.Ct. at 2167; *Taylor v. Louisiana,* 419 U.S. 522, 526, 95 S.Ct. 692, 695, 42 L.Ed.2d 690 (1975) (women excluded from jury); *Ballard v. United States,* 329 U.S. 187, 193, 67 S.Ct. 261, 264, 91 L.Ed. 181 (1946) (women excluded from jury); *Thiel v. Southern Pac. Co.,* 328 U.S. 217, 225, 66 S.Ct. 984, 988, 90 L.Ed. 1181 (1946) (daily wage earners excluded from jury) ].″ *Id.* These cases cited in *Seubert* involve allegations of long-term, systematic exclusion of a class of jurors.

■ We do not believe the decision of the United States Supreme Court in *Batson* is in any way "contrary" to these prior decisions merely because, as noted above, *Batson* does not overrule all prior cases concerning systematic exclusion of a class of jurors. If we accept the argument advanced by Perry, then "every peremptory challenge could be objected to on the basis that, because it excluded a venireman who had some characteristic not shared by the remaining members of the venire, it constituted a 'classification' subject to equal protection scrutiny." *Batson,* 106 S.Ct. at 1737 (Burger, C.J., dissenting). Instead, the principles announced in *Batson* are clearly limited to allegations that the prosecutor struck members of the defendant's own race. Therefore, we reject Perry's claim the exclusion of two Hispanics and an Indian violated his rights under *Batson.*

■ The State does not contend Perry failed to establish a prima facie case of purposeful discrimination against black jurors so we must determine whether the State came forward with neutral explanations for striking the four black jurors Perry alleges were struck for racial reasons. *Cf. United States v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987); *but see Clemons,* 843 F.2d at 746–48; *Smith v. State,* 734 S.W.2d 694, 697 (Tex.App.—Houston [1st Dist.] 1987, no pet.); *Williams v. State,* 712 S.W.2d 835, 841 (Tex.App.—Corpus Christi 1986, no pet.). The State struck juror number seven because he had been charged with, but not prosecuted for, attempted rape. The State struck juror number twenty-eight because she stated on her juror information sheet she had been charged with a crime, but later said the arrestee was her brother. If considered in the light most favorable to the trial court's ruling, we cannot say the trial court erred in accepting these neutral explanations. *Cf. Garza v. State,* 739 S.W.2d 374, 375 (Tex.App.—Corpus Christi 1987, no pet.) (juror struck because she had a son-in-law in prison); *Rodgers v. State,* 725 S.W.2d 477, 480–81 (Tex.App.—Houston [1st Dist.]

1987, no pet.) (juror struck when he gave inconsistent answers on jury form and oral questioning; juror struck because he had a relative involved in a criminal case). Jurors number thirteen and twenty-seven observed Perry talking and joking with bailiffs during a break in the proceedings. A defendant may be prejudiced if the jury is allowed to see him in prison clothes or shackles. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976); *W. LaFave & J. Israel, Criminal Procedure*, sec. 23.3(d) (1985). We cannot say the trial court erred in accepting the prosecutor's contention that Perry's apparent comaraderie with the bailiffs might create a favorable impression just as shackles may create an unfavorable impression.

We overrule Perry's sole point of error. We affirm the judgment of the trial court.