NO. 07-03-0024-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 29, 2004

_____

TOM RICHARD DOYLE, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 359TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 02-05-03090-CR; HON. JERRY A. SANDEL, PRESIDING

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Through nine issues, Tom Richard Doyle, Jr. appeals his convictions on eight counts of indecency with a child, one count of aggravated kidnapping, and one count of aggravated sexual assault of a child.[1] We affirm the convictions yet modify the judgment.

### Issue One - Notice of Outcry Statement

Appellant initially complains about the prior notice given him of the State's intent to call an outcry witness. He contends that statute entitled him to 14 days prior notice but he

_____

[1]Appellant has had two different appellate counsel each of whom filed a brief on his behalf. The first three issues were presented by his first counsel while the last six were presented by his second.

received less.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 §2(2)(b)(1) (Vernon Supp. 2004-2005) (stating that one is entitled to notice of a party's intent to call an outcry witness at least 14 days before trial).  To the extent that he may have been entitled to 14 days prior notice, he filed a motion on September 4, 2002, asking for only seven, and the State afforded him ten.  Given that appellant agreed to only seven days notice, he invited the wrong about which he now complains and, thus, waived it.  *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999), *cert. denied,* 529 U.S. 1102, 120 S.Ct. 1840, 46 L.Ed.2d 782 (2000) (discussing the doctrine of invited error).  Moreover, while authority holds that the 14-day notice is mandatory, *see e.g.*, *Long v. State,* 800 S.W.2d 545, 547 (Tex. Crim. App. 1990), the period is nonetheless subject to waiver. *See e.g. Skidmore v. State,* 838 S.W.2d 748, 753 (Tex. App.–Texarkana 1992, pet. ref'd) (holding that an objection to the want of timely notice can be waived if not urged at trial).

### *Issue Two - Expert Testimony*

Appellant next contends that the trial court erred in admitting "expert testimony in violation of the principals [sic] of Kelly Vs State regarding the child abuse syndrome which commented on the outcry testimony."  The expert in question was FBI Special Agent James Clemente.  Furthermore, the prosecution called him to explain why child victims, such as A.M., do not outcry for a considerable length of time or when first interviewed by law enforcement officers.  We overrule the issue.

While appellant describes at length in his brief what he considers to be the applicable test by which the admissibility of Clemente's testimony must be assessed, *i.e.* the standard announced in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) as

2

opposed to *Nenno v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998), he says next to nothing about how the testimony fails to meet it. And, because we are left to guess at the substance of appellant's contention, the issue has been waived due to inadequate briefing. *See Peake v. State*, 133 S.W.3d 332, 334 (Tex. App.–Amarillo 2004, no pet.) (involving a claim of ineffective assistance of counsel and holding that it was waived because the appellant failed to explain why the evidence to which counsel did not object was inadmissible).

Yet, to the extent appellant may be suggesting that the testimony was inadmissible under the case of *Perez v. State*, 25 S.W.3d 830 (Tex. App.–Houston [1st Dist.] 2000, no pet.), we find the case inapposite. Unlike the expert in *Perez*, Clemente proposed to testify about theories and concepts garnered from his own observations of children who were sexually victimized, from his own interviews with adults who sexually victimized children, from years of data and information developed by the department in which he had worked for some five years, and from his participation in studies with other experts in the field. He was not attempting to proffer expert opinion based merely upon what others may have written about the subject, unlike the witness in *Perez*. *See Hernandez v. State*, 53 S.W.3d 742, 750-51 (Tex. App.–Houston [1st Dist.] 2001, pet. ref'd) (finding *Perez* inapplicable because the witness in *Hernandez* spoke of her own theories based upon her own observations).

Finally, because the theory to be discussed was one involving a "soft science," the standard enunciated in *Nenno* controlled the admission of the evidence, contrary to appellant's suggestion. *State v. Medrano*, 127 S.W.3d 781, 785-87 (Tex. Crim. App.

3

2004). And, in applying that standard to the evidence of record, we have found sufficient basis upon which the trial court could have held not only that the behavior of children who were sexually victimized was a legitimate soft science, *see Hernandez v. State*, 53 S.W.3d at 751 (recognizing that the behavior of sexually victimized children was a legitimate field of expertise), but also that Clemente was qualified to testify about it given his professional experience and observations.

### *Issue Three - Incorrect Name in Jury Charge*

Via his third issue, appellant complains about the addition of the suffix "Jr." to his name in counts five through ten of the guilt/innocence jury charge. Because the abbreviation was omitted in counts five through ten of the indictment (the first four counts contained it), it could not be included in the charge, he continues. In adding the suffix, a variance purportedly arose. We overrule the issue.

Appellant concedes that the State produced evidence "against Tom Richard Doyle, Jr., not Tom Richard Doyle." Furthermore, the appellations "Jr." and "Sr." form no part of a person's legal name, and may be rejected as surplusage. *Cherry v. State,* 447 S.W.2d 154, 156 (Tex. Crim. App. 1969). Thus, because there was no need to include them in the indictment, *Smith v. State,* 734 S.W.2d 694, 698-99 (Tex. App.–Houston [1st Dist.] 1987), *remanded on other grounds,* Nos. 832-87 - 834-87 (Tex. Crim. App. November 16, 1988), there arose no variance between the indictment, evidence, and jury charge.

Moreover, appellant nowhere claims that the circumstance misled him. That too is fatal to his contention. *Green v. State*, 55 S.W.3d 633, 647 (Tex. App.–Tyler 2001, no

4

pet.), *cert. denied*, 535 U.S. 958, 122 S.Ct. 1366, 152 L.Ed.2d 360 (2002) (holding that absent a claim of prejudice, a variance in names is not fatal).

### Issue Four - Cumulation of Sentence

In his fourth issue, appellant argues that the trial court erred in ordering that his sentence for count 1 (indecency with a child) run consecutively to the other sentences levied upon him. This is so because a sentence arising from an indecency conviction cannot be stacked upon a sentence arising from a conviction for aggravated kidnapping (count 4). The State concedes that punishment under count 1 cannot be stacked upon punishment for count 4. Given this, we will reform the judgment and redact all reference to the sentence for count 1 running consecutively to that of count 4. *See Yvanez v. State*, 991 S.W.2d 280, 282-83 (Tex. Crim. App. 1999) (because a sentence for intoxication manslaughter could not be ordered to run consecutively to one for intoxication assault, the court reformed the judgment to declare that it only run consecutively to the other intoxication manslaughter convictions); *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex. Crim. App. 1992) (reforming the judgment to delete the cumulation order).

### Issue Five - Missing Jury Note

Appellant next argues that he is entitled to a new trial because a jury note from the guilt/innocence phase of trial is missing. We overrule the issue for several reasons.

First, we abated this appeal to have the trial court determine what, if any, notes were issued by the jury and whether they were lost. The trial court subsequently convened a hearing and received evidence on the matter. Thereafter, it issued its findings of fact. Nowhere in the latter did the trial court find that the jury issued the note upon which the

5

appellant's contention is based. Instead, it found that "[i]f a third note or any other note exists, as referenced in the affidavit and live testimony of Janice Baldwin [appellant's trial attorney], it can not [sic] be re-created."[2] Nor can we say that the evidence developed at the hearing established that the jury sent a note during the guilt/innocence phase. And, without proof that a note was actually sent, we cannot say that a new trial is required because the note is missing. In other words, we cannot find fault in omitting from the record something that may have never existed.

Second, assuming *arguendo* that a note existed and was lost, before that can result in a new trial, the missing document must be necessary to the appeal's resolution. TEX. R. APP. P. 34.6(f)(3). Appellant's trial counsel stated that if she had an objection, at the time, to the missing note or the trial court's response thereto, she would have read both the note and response into the record. Yet, the record contains no evidence of an objection to any note from the jury while it considered guilt or any judicial response to the supposed note. Without the record illustrating that appellant had voiced any complaint about either, we are unable to see how the note and response are necessary to the appeal's resolution. *Cruz v. State*, 742 S.W.2d 545, 548-49 (Tex. App.–Austin 1988, no pet.) (stating that because the appellant voiced no objection to the note, he was not harmed by its absence from the record); *see Issac v. State,* 989 S.W.2d 754, 757 (Tex. Crim. App. 1999) (stating that obtaining a new trial under Rule 34.6(f) is conditioned upon proof of harm and that one does not suffer harm unless the missing items are necessary to the resolution of the appeal).

---

[2]Baldwin's testimony at the hearing was equivocal. There she said that "if I remember that there was anything at all, that there's a strong possibility that there was something."

6

### *Issue Six - Punishment Hearing*

In his sixth issue, appellant claims that he is entitled to a new punishment hearing due to the trial court's responses to several jury notes sent during the punishment stage of the trial, the inaccuracy of one response, the failure of appellant to be present when the responses were read, and the failure of the trial court to read its responses in open court. We overrule the issue.

As to the last two contentions, both concern application of art. 36.27 of the Texas Code of Criminal Procedure.[3] And, assuming *arguendo* that appellant was not present when the trial court read its responses to the jury questions, his attorney was. Furthermore, nothing of record illustrates that she objected to his absence from the courtroom at the time. Nor does it illustrate that she objected to the purported failure of the judge to read its responses to the jury in open court. Without a timely objection to either purported error, neither were preserved for review. *Hawkins v. State*, 660 S.W.2d 65, 81 (Tex. Crim. App. 1983) (holding that contentions involving noncompliance with art. 36.27 cannot be reviewed on appeal in the absence of a timely objection); *see McGowan v. State*, 664 S.W.2d 355, 358 (Tex. Crim. App. 1984) (involving a trial court's responses to jury questions and holding that the failure to specify the grounds for objection waived error).

As to the propriety of the judge's responses to the inquiries, appellant asserts that they constituted a misstatement of the law. Yet, that ground was not mentioned below. Appellant having failed to raise this objection below, the complaint was waived. *Green v.*

---

[3]Article 36.27 of the code describes the procedure for handling communications between the jury and the trial court. TEX. CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981).

*State,* 912 S.W.2d 189, 192-93 (Tex. Crim. App. 1995), *cert. denied,* 518 U.S. 1021, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996) (involving a trial court's response to a jury question and stating that *Almanza* was "inapplicable" in reviewing the error).

### *Issue Seven - Lesser-Included Offense*

Appellant next argues that he should have received an instruction on the lesser-included offense of enticing a child.  We overrule the issue.

To be entitled to an instruction on a lesser-included offense, it must be shown, among other things, that the elements of the lesser offense are included within the proof necessary to establish the greater offense.  *Campbell v. State*, No. 081-03, 2004 LEXIS 1802 at *8 (Tex. Crim. App. Oct. 27, 2004).  Thus, the elements of the two crimes must be compared.  *Id.* at 9.  And, since the two crimes involved, according to appellant, are aggravated kidnapping and enticing a child, those are the two which we now compare.

One commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to violate or abuse him sexually.  TEX. PEN. CODE ANN. §20.04(a)(4) (Vernon 2003).  "Abduct" means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found or using or threatening to use deadly force.  *Id.* §20.01(2) (Vernon Supp. 2004-2005).  "Restrain" means to restrict a person's movements without consent so as to substantially interfere with the person's liberty by moving the person from one place to another or by confining him by 1) force, intimidation, or deception, or 2) any means, including acquiescence of the victim if the victim is less than 14 years of age and the parent has not acquiesced in the movement or confinement.  *Id.* §20.01(1).

8

Next, the offense of enticing a child occurs if, with the intent to interfere with the lawful custody of a child younger than 18, one knowingly entices, persuades, or takes the child from the custody of the parent. TEX. PEN. CODE ANN. §25.04(a) (Vernon 2003). As can be seen, this crime requires proof of an intent to interfere with the lawful custody of the child. *Briggs v. State,* 807 S.W.2d 648, 652 (Tex. App.–Houston [1st Dist.] 1991, pet. ref'd). Such is not required to establish aggravated kidnapping, however. Given that the elements of the supposedly lesser offense are not included within the proof necessary to secure a conviction for the greater, the crime of enticing a child is not a lesser-included offense of aggravated kidnapping. And, the trial court did not err in refusing to hold otherwise.

### *Issue Eight - Admission of Arrest Warrant*

In his eighth issue, appellant argues the trial court erred in admitting into evidence two federal arrest warrants and then excluding evidence as to the dismissal of any federal kidnapping charge. We overrule the point.

As to the admission of the warrant (there was actually only one), testimony regarding its procurement and execution was solicited and admitted before the prosecutor attempted to physically tender the document into evidence. More importantly, appellant uttered no objections to those questions and answers. Because of that, admission of the warrant itself was and is not reversible error. *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (stating that the improper admission of evidence does not constitute reversible error if the same facts were shown by other evidence which went unchallenged).

As to the evidence regarding the dismissal of any federal kidnapping prosecution, appellant argues that it was admissible under the theory of optional completeness. Yet, that basis for admitting the evidence went unsaid below. So, the latter does not comport

9

with the objection or ground now being urged, and because it does not, appellant failed to preserve it for review. *See Gutierrez v. State,* 85 S.W.3d 446, 454 (Tex. App.–Austin 2000, pet. ref'd) (holding that error was waived when the defendant urged on appeal an objection to an evidentiary ruling different from that mentioned at trial).

### *Issue Nine - Legal and Factual Sufficiency*

In his last issue, appellant contends that the evidence is legally and factually insufficient to support his conviction for aggravated kidnapping. This is purportedly so because the evidence illustrated that he voluntarily released his child victim in a safe place. We overrule the issue.

The offense of aggravated kidnapping is a first degree felony. Yet, if in the punishment stage of the trial the defendant illustrates, by a preponderance of the evidence, that he voluntarily released the victim in a safe place, the gravity of the offense is reduced to that of a felony of the second degree. TEX. PEN. CODE ANN. §20.04(d) (Vernon 2003). In assessing whether the accused released his victim in a safe place, indicia such as 1) the remoteness of the location, 2) the proximity of authorities or persons who could help, 3) the time of day, 4) climatic conditions, 5) the condition of the victim, 6) the character of the location or surrounding neighborhood, and 7) the victim's familiarity with the location or surrounding neighborhood merit consideration. *Nolan v. State,* 102 S.W.3d 231, 238 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd).

Moreover, because §20.04(d) of the Penal Code saddles the defendant with the burden of proof at trial, he may prevail on his claim of legal insufficiency only by establishing, as a matter of law, that his victim was released in a safe place. *Id.* Whether this was done requires us to first examine the record for evidence supporting the jury's

10

verdict and ignoring that which may contradict it. *Id.* If no such evidence appears, then and only then do we search for evidence purporting to establish that the victim was voluntarily released in a safe place. *Id.* However, in assessing appellant's claim of factual sufficiency, we peruse the entire record and then decide whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Nolan v. State,* 102 S.W.3d at 238-39.

The record contains evidence illustrating that A.M. was 11 years old at the time. And, though appellant released him, he did so at 2 a.m. on a December morning down the street from the house wherein the victim's friend lived. The child walked alone to his friend's house, though appellant testified that he watched the boy approach and knock on the door. However, it is undisputed that appellant did not wait to see who, if anyone, answered the door or if the child actually entered the house. Instead, he left the scene. Furthermore, he opted not to personally deliver the boy to the door and wait for someone to appear because he "didn't really plan on waking them [*i.e.* those at the house] up and having them yell at me and say, 'We told you not to be seeing [the child].'" That appellant was hesitant to wake the residents up implies not only that they were asleep but also that they did not expect the child's arrival at that time.

Whether the neighborhood was safe was a topic that went undeveloped. That it may have been "very nice" and an "expensive place to live" does not necessarily assure its security. Absent evidence that crime occurs only in poor neighborhoods or that the criminal or dangerous element of our society eschews "nice neighborhoods" (two propositions which we are not prepared to accept), one would be hard pressed to

11

reasonably infer from appellant's comments that the neighborhood in which the child found himself alone at 2 a.m. was safe. And, while the youth may have stayed the night at his friend's house on other occasions does not necessarily mean that he was familiar with the neighborhood or those who may be traversing it at 2 a.m.

Given the child's age, time of night, the unexpected nature of his arrival at his friend's house, appellant's failure to either walk him to the door or await his entry into the abode, and the dearth of evidence regarding the safety of A.M. and his familiarity with the neighborhood, we cannot say that appellant established, as a matter of law, that the child was released in a safe place. Thus, his claim of legal insufficiency lacks foundation. Nor, after reviewing the entire record, do we find the jury's refusal to hold that appellant released the child in a safe place to be so against the great weight and preponderance of the evidence as to be manifestly unjust. Thus, the claim of factual insufficiency lacks merit as well.

Accordingly, we modify the trial court's judgment and order that the sentences levied against appellant upon counts two through ten run concurrently with each other and that the sentence for count one run consecutively with those for counts three, five, six, seven, eight, nine, and ten. As modified, the judgment is affirmed.

Brian Quinn
Justice

Do not publish.

12