**Norberto SANDOVAL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 13–91–379–CR, 13–91–380–CR.**

Court of Appeals of Texas,
Corpus Christi.

Sept. 17, 1992.

Opinion on Second Motion for
Rehearing Jan. 14, 1993.

Discretionary Review Refused
April 7, 1993.

---

1. TEX.PROB.CODE ANN. § 5(e) (Vernon Supp.1992).

**10**

Joseph Connors, III, McAllen, for appellant.

Rene Guerra, Theodore Hake, Edinburg, for appellee.

Before KENNEDY, SEERDEN and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

Appellant Norberto Sandoval was convicted by a jury of murder and attempted murder. By nine points of error, he asserts that the trial court's judgment was erroneous. We reach only the points of error concerning improper jury argument and sufficiency of the evidence. We reverse the trial court's judgments and remand for new trial.

We begin with a condensed review of the testimony. Sandoval went dancing at King's Palace with Marisol De Leon, Juan Perez, and Maria Irene "Julie" Palacios, Perez's girlfriend. The group decided to go to Palacios' apartment afterwards. Sandoval drove the group in Perez's car. While on the way, Perez and Palacios argued because Palacios had danced with Sandoval. The argument continued when Sandoval stopped the car at a convenience store. Palacios then fled on foot.

Silverio Juarez and Jose Garcia were at the same convenience store in a pickup truck driven by Garcia. While Garcia made a telephone call, the two men overheard the Perez–Palacios argument. A police officer testified that Garcia told him

that he heard one of the men say, "If I, uh, see you, I'm going to kill you."[1] When Juarez and Garcia drove away from the store, they overtook the fleeing Palacios and offered her a ride. She accepted when Perez's car, driven by Sandoval, approached. A game of tortoise and hare followed, with Sandoval passing and stopping in front of the pickup and Garcia pulling around and driving on. Juarez testified that at one of these stops, Sandoval got out of the pickup and held a gun where it was visible, but not pointed toward anyone. De Leon contradicted the testimony about Sandoval holding the gun.

As Sandoval again drew the car near the pickup, Perez reached out of the car window and fired the gun into the air. De Leon testified that Sandoval told Perez to stop shooting and to put the gun away. Perez complied. Meanwhile, out of sight of the car's occupants, Palacios convinced Garcia to pull the pickup over and let her out. Sandoval drew near the pickup, now containing only Garcia and Juarez. This time Perez grabbed the gun, climbed partially out of the passenger window and fired over the top of the car at the pickup, wounding Garcia. Garcia swerved the pickup off the road. Sandoval testified that he thought that Garcia was merely trying to escape. Sandoval drove himself, Perez, and De Leon away from the scene. Garcia died a few days later from complications from his wounds. Sandoval said he did not know that anyone had been shot until he was arrested and charged with the murder of Garcia and the attempted murder of Juarez.

In his sixth point of error, Sandoval complains that the trial court erred in overruling his objection to a portion of the prosecution's final argument. Sandoval contends that the trial court erroneously allowed the prosecution to argue a transferred intent theory not properly included in the jury charge.

The State contends that Sandoval's point of error deviates so much from his objection at trial that the objection does not properly preserve the point. Sandoval's

---

1. The admissibility of this statement is the subject of Sandoval's first two points of error.

point of error reads "During the end of the prosecutor's final argument, the district court reversibly erred in overruling timely and specific objection to the State's 'trial revealed theory' of appellant's criminal responsibility for Juan Perez' aiming at Julie (Palacios) but killing a man."

At trial, the prosecutor stated during argument, "I don't think that Mr. Sandoval nor Juan Perez were out to shoot the driver of the vehicle. It's kind of interesting. As the trial went on, I, now, realized what happened. What happened was that he was aiming at Julie—."

Mr. Connors, Sandoval's attorney, interrupted, "I'm going to object to that. It's not within the jury Charge as given. It implies law that's not here before this jury." The trial court overruled the objection, and the prosecutor continued.

We find that the overruled objection was sufficiently specific and similar to preserve the point of error for our consideration. *See* Tex.R.App.P. 52(a).

■ For a legal issue like transferred intent to be properly before a jury, it must appear in the section of the charge in which the law is applied to the facts of the case. *Jones v. State*, 815 S.W.2d 667, 670 (Tex. Crim.App.1991). An abstract paragraph on a theory of law is not sufficient. *Id.* The charge in this case contained an outline of the principle of transferred intent found in Tex.Penal Code Ann. § 6.04(b)(2) (Vernon 1974). The charge did not contain any language applying the law of transferred intent to the facts of this case. Under *Jones,* transferred intent was not properly before the jury. The trial court erred in allowing the prosecution to argue transferred intent theory to the jury.

■ This error requires reversal unless we find beyond a reasonable doubt that the error made no contribution to the conviction. Tex.R.App.P. 81(b)(2). The transferred intent theory eased the burden of proof on the State because the State needed only prove that defendants intended to kill someone, not the victims particularly. The prosecutor leaned heavily on transferred intent during argument, stating that

during the course of trial he realized that Sandoval and Perez did not intend to shoot Garcia. If the jury applied the law of transferred intent, as urged by the prosecutor over overruled objection, it convicted Sandoval on a standard improperly different than that in the jury charge. We cannot find beyond a reasonable doubt that the jury was not influenced by the argument to consider law not properly in the charge. We uphold the sixth point of error.

In his last three points of error, Sandoval challenges the sufficiency of the evidence to support his convictions. He contends in his seventh and eighth points of error that there was insufficient evidence that Perez intentionally or knowingly caused Garcia's death and attempted to cause Juarez's death; that Sandoval knew of Perez's intentions; that Sandoval knowingly or intentionally acted with intent to promote or assist the commission of these crimes; and that Sandoval encouraged, directed, aided, solicited, or attempted to aid Perez in committing these crimes. By his ninth point of error, Sandoval asserts that the evidence is insufficient for his conviction because the criminal acts were done solely by Perez as an independent actor.

■ To review challenges to the sufficiency of the evidence in cases involving circumstantial evidence, we must view the evidence in the light most favorable to the prosecution and determine whether the evidence excludes every reasonable hypothesis other than guilt. *Girard v. State*, 631 S.W.2d 162 (Tex.Crim.App.1982), (*overruled by Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991)). Though *Geesa* overruled *Girard*, we must apply the *Girard* standard here because the overruling was limited prospectively. A limited prospective overruling means that the new rule applies only to the case in which the rule is announced and cases tried after the effective date of the announcing case. *Geesa*, 820 S.W.2d at 163, n. 13. The *Geesa* rule does not apply here since this trial was held in May 1990 and *Geesa* was handed down in November 1991. We view the evidence against the elements properly in the

charge, and do not consider the incomplete charge on transferred intent.

■ Viewing the evidence most favorably to the prosecution, we find that there is sufficient evidence to support the jury's verdict. Perez and Sandoval pursued the pickup. They engaged in increasingly aggressive behavior toward the pickup and its occupants. Sandoval repeatedly stopped in front of the pickup on the highway in an attempt to force the pickup to stop. Sandoval displayed the gun to the occupants of the pickup. He drove the car alongside of the pickup while Perez shot into the air. Later, he again drove the car alongside the pickup while Perez took aim at the occupants and fired, killing the driver. Viewed favorably to the prosecution, this series of events rules out any reasonable hypothesis other than that Perez murdered Garcia and attempted to murder Juarez; that Sandoval knew of Perez's intentions; and that Sandoval intended to and did promote or assist Perez in committing these crimes. Under the standard of review, this court finds sufficient evidence of Sandoval's participation to show that Perez did not commit the criminal acts as a sole, independent actor.

Though we find the evidence sufficient to support the convictions, we reverse the ruling of the trial court and remand for a new trial. At the new trial, the jury may even acquit on a lower standard of proof (transferred intent) than we found sufficient to support conviction. Such a verdict would not run afoul of our sufficiency findings because the jury will not be constrained, as we were, to view the evidence most favorably to the prosecution.

We find that Sandoval's sixth point of error is well taken. The trial court's judgments are reversed and the cases remanded for new trial.

## OPINION ON APPELLANT'S SECOND MOTION FOR REHEARING

This Court, in its original opinion, erroneously found the evidence sufficient to support the trial court's judgment that appellant murdered Jose Garcia, Jr. The facts of this case show that the alleged "murder victim" is alive. We have no choice but to grant appellant's second motion for rehearing, reverse the trial court's judgment, and acquit appellant of the charge of murder.

A person who reads the opinion we issued on September 17, 1992, will not be aware of the enormity of our error, for we failed to address each argument that appellant advanced under his sufficiency point. The attorney representing Mr. Sandoval is blameless for our initial failure to acquit appellant. He raised an appropriate point of error, claiming insufficiency of the evidence to support conviction for the crime alleged in the jury charge. To further specify his complaint, appellant listed the following four elements the state failed to prove: 1) that he caused the death of Jose Garcia, Jr., 2) that he knew the intent of Juan Perez to commit the offense, 3) that he knowingly acted with intent to promote or assist the offense, and 4) that he encouraged, directed, aided, solicited, or attempted to aid Perez to commit the offense. Perhaps this opinion will convince appellate lawyers of the need to raise a separate point of error for each specific complaint and to argue each point separately to ensure that appellate courts will recognize each complaint.

Appellant was indicted for the offense of murder. The indictment states in relevant part as follows:

... that NORBERTO SANDOVAL hereinafter styled Defendant, on or about the 12th day of June A.D., 1989, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally and knowingly cause the death of an individual, Jose Garcia, Jr., the victim, by shooting the said victim with a deadly weapon, to-wit: a firearm ...

The jury was charged that it could convict appellant for murder only if it found beyond a reasonable doubt that

... JUAN ALFREDO PEREZ did then and there intentionally or knowingly cause the death of an individual, JOSE GARCIA, JR., the victim, by shooting the said victim, JOSE GARCIA, JR., with a deadly weapon, to-wit: a firearm ...

and additionally found beyond a reasonable doubt that

> ... NORBERTO SANDOVAL then and there knew of the intent, if any, of the said JUAN ALFREDO PEREZ to commit the above said offense of murder, if JUAN ALFREDO PEREZ did, and the defendant, NORBERTO SANDOVAL, knowingly or intentionally acted with intent to promote or assist the commission of that above said murder offense, if any, by JUAN ALFREDO PEREZ and that the defendant NORBERTO SANDOVAL did encourage or direct or aid or solicit or attempt to aid JUAN ALFREDO PEREZ to commit the above said murder, if any....

In his first motion for rehearing, appellant complained that we overruled his factual sufficiency point of error without making any factual findings, but he did not specify our failure to make findings regarding the vitality of Jose Garcia, Jr. In his second motion for rehearing, appellant complained that we failed to make factual findings regarding whether Jose Garcia, Jr. was dead and that the trial court heard no evidence that Jose Garcia, Jr. is dead.

■ We review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the charge. *Benson v. State*, 661 S.W.2d 708, 715 (Tex. Crim.App.1982) (opinion on rehearing). There is no such thing as surplusage in the part of the court's instructions which authorizes a conviction. *Ortega v. State*, 668 S.W.2d 701, 707 n. 5 (Tex.Crim.App.1983) (opinion on rehearing).

■ Tex.Code Crim.Proc.Ann. art. 21.07 (Vernon 1989) provides in pertinent part:

> In alleging the name of the defendant, or any other person necessary to be stated in the indictment, it shall be sufficient to state one or more of the initials of the Christian name and the surname.

Courts interpreting this rule have held that the suffixes "Jr." or "Sr." form no part of the name and may be regarded as surplusage. *See Smith v. State*, 435 S.W.2d 526, 527 (Tex.Crim.App.1969); *Smith v. State*, 734 S.W.2d 694, 699 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

These cases are distinguishable, for even if the allegation of "Jr." in the indictment could have been disregarded as surplusage, *Benson, Ortega,* and their progeny teach that there is no such thing as surplusage in the part of the court's charge which authorizes a conviction. Once the charge authorized conviction only upon a finding that Jose Garcia, Jr. was killed, the State was bound to prove that fact.

Jose Garcia, Jr. was alive at the time of trial, and as far as anyone knows, is alive today. The State produced no evidence that Jose Garcia, Jr. was killed. In fact, Jose Garcia, Jr.'s mother testified as follows:

> PROSECUTOR: Please state your name.
>
> WITNESS: My name is Chavela Franco Garcia.
>
> PROSECUTOR: Okay, are you familiar with the individual, Jose P. Garcia?
>
> WITNESS: Yes, sir. He was my husband.
>
> \* \* \* \* \* \*
>
> PROSECUTOR: I hand the witness what's been marked State's Exhibit # 19. Do you know what the document is?
>
> WITNESS: This is the death certificate of my husband, Jose Garcia.
>
> PROSECUTOR: And is your husband Jose Garcia?
>
> WITNESS: Yes, sir.
>
> \* \* \* \* \* \*
>
> PROSECUTOR: Do you have a picture of your husband?
>
> WITNESS: Yes, sir.
>
> \* \* \* \* \* \*
>
> (State's Exhibit # 23 was marked for identification and subsequently admitted into evidence without objection.)
>
> PROSECUTOR: Alright, let me hand you back what's been marked State's Exhibit # 23. There are two individuals in that picture. Would you tell the jury who those individuals are?
>
> WITNESS: These are my husband, Jose Garcia, and my son, Jose Garcia, Jr.

PROSECUTOR: Jose Garcia, the man in the picture is the victim in this case, right? The murder case? Is that true?

WITNESS: Yes.

Neither the indictment nor the jury charge alleged that Jose Garcia was the victim in this case. Since the State alleged and accepted the burden of proving the death of Jose Garcia, Jr., but produced no evidence that Jose Garcia, Jr. is dead, we have no alternative but to reverse the judgment and acquit the appellant. We grant appellant's second motion for rehearing, reverse the judgment, and acquit appellant in Cause No. 13–91–379–CR.

We deny rehearing in Cause No. 13–91–380–CR.