IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00282-CR

 

Shawna Beller,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 411th District Court

Polk County, Texas

Trial Court # 16480

 



Opinion



 








          Shawna
Beller was convicted of third degree felony theft and was sentenced to four
years' confinement.  She complains on
appeal that the court erred by admitting her written confession because it was coerced.  We affirm.

BACKGROUND

          First United
 Methodist Church of Onalaska hired Beller as its financial secretary.  Her duties included making deposits and
paying the weekly bills.  A year and a
half after she had been hired, the church was notified by the district
conference of the United
 Methodist Church that it had paid only 25% of its annual apportionment.  However, the church's financial report showed
that all the apportionment had been paid.

          The
church's pastor asked Beller to find all of the cancelled checks that showed
that the apportionment had been paid. 
When Beller did not produce the cancelled checks after several weeks,
the church began an investigation.  After
searching the church office, church officials were unable to find any cancelled
checks.  Also, the financial records for
the year were missing on the church's computer as were copies of the compact
disks that ran the accounting program.  A
church official called Beller and asked her to return the missing records.  Beller replied that she was out of town but
would bring the records upon her return. 
The church never received the records.

          Upon
obtaining copies of the cancelled checks from the bank, the church compared
them with the financial reports prepared by Beller.  It discovered that the checks listed in the
financial reports as having been paid to the district conference and other
creditors, totaling $56,160.45, were actually paid to either Beller, or to her
husband Albert's company.

          Subsequently,
Beller was arrested and gave a written confession.  Prior to trial, Beller filed a motion to suppress
her confession; however, at the hearing on her motion, the trial court denied
Beller's motion and admitted her confession.

          On
appeal, Beller argues that the trial court erred (1) by admitting her written
confession because it was coerced; (2) by failing to enter mandatory findings
of fact and conclusions of law regarding the voluntariness of her confession;
and (3) by excluding the testimony of her expert witness testifying as to the
voluntariness of her confession.




FINDINGS
OF FACT AND CONCLUSIONS OF LAW

          Beller
argues in her second issue that the trial court erred by not entering findings
of fact and conclusions of law on the voluntariness of her confession.  The Texas Code of Criminal Procedure requires
a trial court to enter written findings of fact and conclusions of law that
specifically support its conclusion that the defendant's statements were
voluntary.  Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2004).

          However,
the Texas Court of Criminal Appeals has stated that "the right to findings
and conclusions is a statutory right which is forfeited by a party's failure to
insist upon its implementation."  State v. Terrazas, 4 S.W.3d 720, 728
(Tex. Crim. App. 1999).  Therefore,
because Beller did not raise the failure to file findings to the attention of
the trial court, she has waived this issue on appeal.  We overrule Beller's second issue.

EXPERT
WITNESS

          Beller
argues in her third issue that the trial court erred by not allowing her expert
witness to testify at trial concerning the voluntariness of her
confession.  Outside the presence of the
jury, the trial court conducted a hearing to determine if the expert witness's
testimony would help the trier of fact understand the evidence.  Tex.
R. Evid. 702; Kelly v. State,
824 S.W.2d 568, 572 (Tex. Crim. App. 1992). 
The trial court found that the expert's testimony was not well grounded
in any scientific, technical, or other specialized knowledge and refused to
admit the testimony.

          We
review a trial court's decision to exclude expert testimony under an abuse-of-discretion
standard.  Kelly, 824 S.W.2d at 574.  We
will uphold the trial court's decision if it is within the "zone of
reasonable disagreement."  Id.  We defer
to the trial judge's assessment of the weight and credibility of the evidence
and view the evidence in the light most favorable to the trial court's
decision.  Id.

          The
threshold determination for a trial court to make is whether the testimony will
help the trier of fact understand the evidence or determine a fact at
issue.  Id. at 572.  The
trial court must first determine if the testimony is sufficiently reliable and
relevant to help the jury in reaching its decision.  Id.

          Ordinarily
a trial court would use the Kelly criteria
to assess the scientific reliability of expert testimony.[1]  Id. at 573.  However, the Court of Criminal Appeals in
applying Kelly to social sciences
promulgated three questions that are helpful in determining scientific
reliability in fields based primarily on "experience and training as
opposed to the scientific method."  Nenno v. State, 970 S.W.2d 549, 561
(Tex. Crim. App. 1998).  These questions
are (1) whether the field of expertise is a legitimate one; (2) whether the subject
matter of the expert's testimony is within the scope of that field; and (3)
whether the expert's testimony properly relies upon and/or utilizes the
principles involved in the field.  Id.  We will
use these questions in our determination of whether Beller has met her burden
of persuasion by clear and convincing evidence that her expert's testimony is
reliable.

          Beller's
expert, Sandy Carter, testified at the hearing that she would provide testimony
as to Beller's state of mind when she gave her confession.  Carter diagnosed Beller as having a bipolar
disorder with occasional euphoric states. 
She stated that this disorder affected her ability to reason and think
clearly.  However, Carter would not give
an opinion as to whether this disorder affected the voluntariness of Beller's
confession, nor would she give an opinion as to whether Beller understood her
statutory warnings.  Carter would only
state that anybody coming before a court of law, regardless of mental state, would
say whatever they thought the court would want to hear, and indicated that the
general populace was "not addicted to the truth by any means
whatsoever."  Furthermore, Carter
could not refer to any documented studies in the field, nor did she mention any
upon which she had relied while formulating her opinions.

          We
find that Beller failed to prove by clear and convincing evidence the
scientific reliability of Carter's testimony. 
See Green v. State, 55 S.W.3d
633, 640 (Tex. App.—Tyler 2001, no pet.) (upholding the trial
court's decision to exclude expert because the expert failed to name any
authorities in the field and failed to provide the trial court with authorities
supporting his analysis).  Therefore, the
trial court's decision to exclude the testimony was not so clearly wrong as to
lie outside the "zone of reasonable disagreement."  Kelly,
824 S.W.2d at 574.  Accordingly, we hold
that the trial court did not abuse its discretion.  We overrule Beller's third issue.

THE
CONFESSION

          Beller argues in her first issue that
the trial court erred in admitting her confession because it was coerced.  In reviewing a trial court's ruling on
whether a confession is admissible, we defer to the trial court's determination
of historical facts based on an evaluation of the witnesses' credibility and
demeanor.  See Sells v. State, 121 S.W.3d 748, 767 (Tex. Crim. App. 2003); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Gonzales v. State, 4 S.W.3d 406, 413-14
(Tex. App.—Waco 1999, no pet.).  We must
view the evidence in the record and all its reasonable inferences in the light
most favorable to the trial court's ruling and sustain the trial court's ruling
if it is reasonably supported by the record and is correct on any theory of law
applicable to the case.  Guzman, 955 S.W.2d at 89; Gonzales, 4 S.W.3d at 413-14.  However, if a mixed question of law and fact
does not turn on a witness's credibility and demeanor, we review the trial
court's determination de novo.  Guzman, 955 S.W.2d at 89; Gonzales, 4 S.W.3d at 413-14.

          A statement is not voluntary if there
was "official, coercive conduct of such a nature that any statement
obtained thereby was unlikely to have been the product of an essentially free
and unconstrained choice by its maker." 
Alvarado v. State, 912 S.W.2d
199, 211 (Tex. Crim. App. 1995).  The
state bears the burden of proving by a preponderance of the evidence that the
confession was given voluntarily.  Id.  We
review a trial court's finding on voluntariness under an abuse-of-discretion
standard.  Id.

          Shortly
after the church discovered the theft, police officers were dispatched with a
warrant to arrest Beller and Albert. 
Officer Purvis testified that Albert answered the door and, after Purvis
disclosed the purpose of his presence, a female voice was heard within the
house stating, "He doesn't know anything about this.  It's all mine."  Purvis identified the voice as Beller's.  Purvis read the couple their rights, and then
he and another officer escorted them to separate cars.

          Purvis
drove the police car transporting Beller to the station.  Purvis testified that Beller initiated a
conversation with him by asking the amount she was accused of stealing.  When Purvis told her the approximate amount,
Beller emphasized that Albert had nothing to do with it.

          On
the other hand, Beller admitted stating to Purvis that Albert didn't know
anything about this, but she denied stating that it was all hers.  She further testified that Purvis initiated
the conversation in the patrol car by telling her that she was going to Hell,
and that he had serious questions about anyone that would steal from a church.

          At
the police station, Beller and Albert were placed in different rooms.  Purvis testified that, after talking with
Albert, he asked Beller if she wanted to give a statement.  Beller agreed and wrote a statement
confessing that she wrote unauthorized checks totaling several thousand dollars
and deposited them in her account.  Purvis
testified that at no time did Beller ask for an attorney.

          In
contrast, Beller testified that Purvis and two other officers told her that
they would probably release Albert on a personal recognizance bond but that she
had to make a statement.  It was the
probability of Albert's release that Beller claimed influenced her to make a
statement.  However, Beller acknowledged
that Purvis never promised that Albert would be released if she gave a
statement.

          Because
two versions of events were presented to the trial court, it was required to
evaluate the credibility of the witnesses. 
Guzman, 955 S.W.2d at 89; Gonzales, 4 S.W.3d at 413-14.  As stated above, we are required to defer to
the trial court's decisions on matters of witness credibility.  Guzman,
955 S.W.2d at 89; see Sells, 121
S.W.3d at 767.  Therefore, we find that the
court did not abuse its discretion in finding that the confession was voluntary
and in admitting the confession into evidence. 
Alvarado, 912 S.W.2d at 211.  Accordingly, we overrule Beller's first
issue.

CONCLUSION

          Having
overruled all of Beller's issues, we affirm the judgment of the trial court.

 

                                                                   FELIPE
REYNA

                                                                   Justice

 

Before Chief Justice Gray,

          Justice Vance, and 

          Justice Reyna

Affirmed

Opinion delivered and filed September 15, 2004

Publish

[CR25]











   [1]            Kelly
holds that for an expert’s testimony to be considered reliable: (a) the
underlying scientific theory must be valid; (b) the technique applying the
theory must be valid; and (c) the technique must have been properly applied on
the occasion in question.  Other factors
which could effect a trial court's determination of reliability include, but
are not limited to the following:  (1)
the extent to which the underlying scientific theory and technique are accepted
as valid by the relevant scientific community; (2) the qualifications of the
expert testifying; (3) the existence of literature supporting or rejecting the
underlying scientific theory and technique; (4) the potential rate of error of
the technique; (5) the availability of other experts to test and evaluate the
technique; (6) the clarity with which the underlying scientific theory and
technique can be explained to the court; and (7) the experience and skill of
the person who applied the technique on the occasion in question.  Kelly,
824 S.W.2d at 573.