Shawna BELLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–02–00282–CR.

Court of Appeals of Texas,
Waco.

Sept. 15, 2004.

Karen Zellars, Spring, for appellant.

John S. Holleman, Polk County Dist. Atty., William Lee Hon, Polk County Asst. Dist. Atty., Livingston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Shawna Beller was convicted of third degree felony theft and was sentenced to four years' confinement. She complains on appeal that the court erred by admitting her written confession because it was coerced. We affirm.

## BACKGROUND

First United Methodist Church of Onalaska hired Beller as its financial secretary. Her duties included making deposits and paying the weekly bills. A year and a half after she had been hired, the church was notified by the district conference of the United Methodist Church that it had paid only 25% of its annual apportionment. However, the church's financial report showed that all the apportionment had been paid.

The church's pastor asked Beller to find all of the cancelled checks that showed that the apportionment had been paid. When Beller did not produce the cancelled checks after several weeks, the church began an investigation. After searching the church office, church officials were unable to find any cancelled checks. Also, the financial records for the year were missing on the church's computer as were copies of the compact disks that ran the accounting program. A church official called Beller and asked her to return the missing records. Beller replied that she was out of town but would bring the records upon her return. The church never received the records.

Upon obtaining copies of the cancelled checks from the bank, the church compared them with the financial reports prepared by Beller. It discovered that the checks listed in the financial reports as having been paid to the district conference and other creditors, totaling $56,160.45, were actually paid to either Beller, or to her husband Albert's company.

Subsequently, Beller was arrested and gave a written confession. Prior to trial, Beller filed a motion to suppress her confession; however, at the hearing on her motion, the trial court denied Beller's motion and admitted her confession.

On appeal, Beller argues that the trial court erred (1) by admitting her written confession because it was coerced; (2) by failing to enter mandatory findings of fact and conclusions of law regarding the voluntariness of her confession; and (3) by excluding the testimony of her expert witness testifying as to the voluntariness of her confession.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Beller argues in her second issue that the trial court erred by not entering findings of fact and conclusions of law on the voluntariness of her confession. The Texas Code of Criminal Procedure requires a trial court to enter written findings of fact and conclusions of law that specifically support its conclusion that the defendant's statements were voluntary. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2004).

However, the Texas Court of Criminal Appeals has stated that "the right to findings and conclusions is a statutory

right which is forfeited by a party's failure to insist upon its implementation." *State v. Terrazas*, 4 S.W.3d 720, 728 (Tex.Crim. App.1999). Therefore, because Beller did not raise the failure to file findings to the attention of the trial court, she has waived this issue on appeal. We overrule Beller's second issue.

## EXPERT WITNESS

Beller argues in her third issue that the trial court erred by not allowing her expert witness to testify at trial concerning the voluntariness of her confession. Outside the presence of the jury, the trial court conducted a hearing to determine if the expert witness's testimony would help the trier of fact understand the evidence. TEX.R. EVID. 702; *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App.1992). The trial court found that the expert's testimony was not well grounded in any scientific, technical, or other specialized knowledge and refused to admit the testimony.

We review a trial court's decision to exclude expert testimony under an abuse-of-discretion standard. *Kelly*, 824 S.W.2d at 574. We will uphold the trial court's decision if it is within the "zone of reasonable disagreement." *Id.* We defer to the trial judge's assessment of the weight and credibility of the evidence and view the evidence in the light most favorable to the trial court's decision. *Id.*

The threshold determination for a trial court to make is whether the testimony will help the trier of fact understand the evidence or determine a fact at issue. *Id.* at 572. The trial court must first determine if the testimony is sufficiently reliable and relevant to help the jury in reaching its decision. *Id.*

Ordinarily a trial court would use the *Kelly* criteria to assess the scientific reliability of expert testimony.[1] *Id.* at 573. However, the Court of Criminal Appeals in applying *Kelly* to social sciences promulgated three questions that are helpful in determining scientific reliability in fields based primarily on "experience and training as opposed to the scientific method." *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim.App.1998). These questions are (1) whether the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Id.* We will use these questions in our determination of whether Beller has met her burden of persuasion by clear and convincing evidence that her expert's testimony is reliable.

Beller's expert, Sandy Carter, testified at the hearing that she would provide testimony as to Beller's state of mind when she gave her confession. Carter diagnosed Beller as having a bipolar disor-

---

1. *Kelly* holds that for an expert's testimony to be considered reliable: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. Other factors which could affect a trial court's determination of reliability include, but are not limited to the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person who applied the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573.

der with occasional euphoric states. She stated that this disorder affected her ability to reason and think clearly. However, Carter would not give an opinion as to whether this disorder affected the voluntariness of Beller's confession, nor would she give an opinion as to whether Beller understood her statutory warnings. Carter would only state that anybody coming before a court of law, regardless of mental state, would say whatever they thought the court would want to hear, and indicated that the general populace was "not addicted to the truth by any means whatsoever." Furthermore, Carter could not refer to any documented studies in the field, nor did she mention any upon which she had relied while formulating her opinions.

We find that Beller failed to prove by clear and convincing evidence the scientific reliability of Carter's testimony. *See Green v. State*, 55 S.W.3d 633, 640 (Tex. App.-Tyler 2001, no pet.) (upholding the trial court's decision to exclude expert because the expert failed to name any authorities in the field and failed to provide the trial court with authorities supporting his analysis). Therefore, the trial court's decision to exclude the testimony was not so clearly wrong as to lie outside the "zone of reasonable disagreement." *Kelly*, 824 S.W.2d at 574. Accordingly, we hold that the trial court did not abuse its discretion. We overrule Beller's third issue.

### THE CONFESSION

▮ Beller argues in her first issue that the trial court erred in admitting her confession because it was coerced. In reviewing a trial court's ruling on whether a confession is admissible, we defer to the trial court's determination of historical facts based on an evaluation of the witnesses' credibility and demeanor. *See Sells v. State*, 121 S.W.3d 748, 767 (Tex. Crim.App.2003); *Guzman v. State*, 955

S.W.2d 85, 89 (Tex.Crim.App.1997); *Gonzales v. State*, 4 S.W.3d 406, 413–14 (Tex. App.-Waco 1999, no pet.). We must view the evidence in the record and all its reasonable inferences in the light most favorable to the trial court's ruling and sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Guzman*, 955 S.W.2d at 89; *Gonzales*, 4 S.W.3d at 413–14. However, if a mixed question of law and fact does not turn on a witness's credibility and demeanor, we review the trial court's determination de novo. *Guzman*, 955 S.W.2d at 89; *Gonzales*, 4 S.W.3d at 413–14.

▮ A statement is not voluntary if there was "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim. App.1995). The state bears the burden of proving by a preponderance of the evidence that the confession was given voluntarily. *Id.* We review a trial court's finding on voluntariness under an abuse-of-discretion standard. *Id.*

▮ Shortly after the church discovered the theft, police officers were dispatched with a warrant to arrest Beller and Albert. Officer Purvis testified that Albert answered the door and, after Purvis disclosed the purpose of his presence, a female voice was heard within the house stating, "He doesn't know anything about this. It's all mine." Purvis identified the voice as Beller's. Purvis read the couple their rights, and then he and another officer escorted them to separate cars.

Purvis drove the police car transporting Beller to the station. Purvis testified that Beller initiated a conversation with him by asking the amount she was accused of stealing. When Purvis told her the ap-

proximate amount, Beller emphasized that Albert had nothing to do with it.

On the other hand, Beller admitted stating to Purvis that Albert didn't know anything about this, but she denied stating that it was all hers. She further testified that Purvis initiated the conversation in the patrol car by telling her that she was going to Hell, and that he had serious questions about anyone that would steal from a church.

At the police station, Beller and Albert were placed in different rooms. Purvis testified that, after talking with Albert, he asked Beller if she wanted to give a statement. Beller agreed and wrote a statement confessing that she wrote unauthorized checks totaling several thousand dollars and deposited them in her account. Purvis testified that at no time did Beller ask for an attorney.

In contrast, Beller testified that Purvis and two other officers told her that they would probably release Albert on a personal recognizance bond but that she had to make a statement. It was the probability of Albert's release that Beller claimed influenced her to make a statement. However, Beller acknowledged that Purvis never promised that Albert would be released if she gave a statement.

Because two versions of events were presented to the trial court, it was required to evaluate the credibility of the witnesses. *Guzman*, 955 S.W.2d at 89; *Gonzales*, 4 S.W.3d at 413–14. As stated above, we are required to defer to the trial court's decisions on matters of witness credibility. *Guzman*, 955 S.W.2d at 89; *see Sells*, 121 S.W.3d at 767. Therefore, we find that the court did not abuse its discretion in finding that the confession was voluntary and in admitting the confession into evidence. *Alvarado*, 912 S.W.2d at 211. Accordingly, we overrule Beller's first issue.

## CONCLUSION

Having overruled all of Beller's issues, we affirm the judgment of the trial court.